1  ROBBINS ARROYO LLP
2  BRIAN J. ROBBINS (190264)
   KEVIN A. SEELY (199982)
3  LEONID KANDINOV (279650)
   600 B Street, Suite 1900
4  San Diego, CA 92101
   Telephone: (619) 525-3990
5  Facsimile: (619) 525-3991
   E-Mail: brobbins@robbinsarroyo.com
6          kseely@robbinsarroyo.com
           lkandinov@robbinsarroyo.com
7
8  Attorneys for Plaintiff

9                UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11
   DANIEL WHITE, Individually and on  )  Case No.  '16CV3037 H    JMA
12 Behalf of All Others Similarly      )
   Situated,                           )
13                                     )
                                       )  CLASS ACTION COMPLAINT
14                  Plaintiff,         )
                                       )
15         v.                          )
                                       )
16 AUDI AG and AUDI OF AMERICA,        )
   LLC,                                )
17                                     )
                                       )
18                  Defendants.        )
                                       )  DEMAND FOR JURY TRIAL
19 _____      )

20

21

22

23

24

25

26

27

28

## NATURE OF THE CASE

1.    Plaintiff Daniel White ("Plaintiff") individually and on behalf of the other members of the Nationwide Class and State Class defined herein (the "Class" or "Classes") brings this Class Action Complaint (the "Complaint") against defendants Audi AG and Audi of America, LLC ("Defendants" or "Audi") seeking redress and remedy for Audi's practice of equipping certain vehicles with an illegal "Defeat Device" designed to evade governmental emissions regulation by tricking the public and regulators into thinking the vehicles emitted far less noxious carbon dioxide gas ("$CO_2$") than they actually do. Plaintiff makes these allegations upon personal knowledge as to himself and his own acts and, as to all other matters, upon information and belief.

2.    The Defeat Device in question works only when an affected vehicle is being tested. At that time, the car's full emissions control systems kick in as a "warm-up function." However, once on the road, the full array of emissions controls shut off, and the affected vehicles produce substantially more $CO_2$ after consuming much more gasoline than during testing. Audi used this Defeat Device so that it could pretend its vehicles were energy efficient and good for the environment, without having to sacrifice performance.

3.    Plaintiff was unaware that the Audi vehicle he purchased was equipped with an illegal Defeat Device. Indeed, Audi represented to consumers and regulators that these vehicles offered excellent performance in combination with legal, clean emissions; in truth, those characteristics were mutually exclusive. As we know, this was not the case.

4.    Audi sold vehicles to Plaintiff and Class members without informing them of the existence of the Defeat Device, and by falsely representing to them that the vehicles were compliant with all relevant emissions standards when in normal use. Audi also falsely represented the fuel efficiency of the vehicles.

5.     Plaintiff and Class members suffered damages as a result of Audi's misrepresentations and omissions regarding the Defeat Device.  At the very least, then, Plaintiff and Class members overpaid for their vehicles, which are incapable of providing the balance of performance, fuel efficiency, and cleanliness that Audi advertised.  Plaintiff and Class members have also suffered diminution of vehicle value now that the existence of the Defeat Device has been revealed.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332(d) because at least one Class member is of diverse citizenship from Audi, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

7.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff brings claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

8.     This Court has personal jurisdiction over Audi because Audi's contacts with the State of California are systematic, continuous, and sufficient to subject it to personal jurisdiction in this Court.  Specifically, Audi purposefully availed itself of the privilege of conducting business in the forum state by advertising and selling its manufactured vehicles (including the vehicles at issue) within the forum state. Additionally, Audi has maintained systematic and continuous business contacts within the forum state (including with its authorized dealers within the State) and is registered to conduct business in the State.

9.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this District.   Audi has marketed, advertised, sold, and leased the vehicles, and Audi otherwise conducted extensive business within this District. Plaintiff, as well as many other Class members, purchased their vehicles from Audi dealers located in this District.

## PARTIES

**Plaintiff**

10.    Plaintiff is a citizen of California and resident of Escondido, California. Plaintiff purchased his 2015 Audi A8L Diesel from an Audi dealership in California.

**Defendants**

11.    Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.   Accordingly, defendant Audi AG is a citizen of Germany.    Audi AG is the parent of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly owned subsidiary of Volkswagen AG ("Volkswagen").    Audi AG directly controls and directs the actions of Audi of America, LLC. Audi AG designs, develops, manufacturers, and sells luxury automobiles.    According to Audi AG, the Audi Group sold more than 200,000 vehicles in the United States in 2015.

12.    Defendant Audi of America, LLC is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia.  Accordingly, defendant Audi of America, LLC is a citizen of Delaware and Virginia.    Audi of America, LLC is a wholly owned United States subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles, in all fifty states and the District of Columbia.

## FACTUAL ALLEGATIONS

13.    In or around July 2016, the California Air Resources Board ("CARB") discovered that Audi had also secretly installed a Defeat Device on several Audi models equipped with a certain eight-speed automatic transmission to deceptively regulate the emission of the noxious gas $CO_2$.

14.    Audi installed the Defeat Device on both gasoline and diesel engine vehicles that were equipped with one of two automatic transmissions with the internal designations AL 551 and DL 501 through May 2016.  The AL 551 transmission

- 3 -

belongs to the ZF 8HP family of eight-speed units Audi sourced from transmission supplier ZF Friedrichshafen, commonly known as ZF.  The DL 501 model Audi sourced from Volkswagen.   The vehicles that Audi equipped with the AL 551 and DL 501 transmissions—and, therefore, with the Defeat Device—include, but may not be limited to, the  Audi A6, A8, Q5, Q7, S4, S5, S6, and S7 models.

15.    The Defeat Device uses engine and transmission management software and the car's sensors to detect when the vehicle is undergoing emissions testing.  The Defeat Device then fully employs the vehicle systems to reduce $CO_2$ to legal levels. The Defeat Device only kicks in during test cycles.

16.    Audi was able to disguise this deception by programming its engines with the ability to engage different modes, one of which used significantly less fuel and emitted significantly less $CO_2$, but also delivered significantly less power.  Audi deceptively dubbed this the "warm-up" strategy, a mode that activates when the vehicles are started.  As long as the "warm-up" function remains activated, the automatic transmission remains in a "switching program" that produces a low engine speed, consumes less fuel, and produces less $CO_2$.

17.    Audi also figured out how to activate this low fuel/low emissions/low power mode  during governmental tests. Audi engineers concluded that the only time the vehicles would run continuously with no steering wheel input would be when the vehicles were undergoing examination in a lab, on a test bed.   The vehicles' transmissions control modules ("TCM") therefore set "shift points" that allow the vehicles to detect those lab conditions and to produce compliant emission results under those conditions (known by Volkswagen as the "dyno calibration" mode).[1]

_____

[1] The Defeat Device software is imbedded in the TCM.  The TCM's primary function is to establish shift logic by reacting to signals from sensors monitoring coolant temperature, exhaust  temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow  volumes. The TCM and engine control unit ("ECU") work in tandem to execute  the actual cheat function.   The engineers

- 4 -

Under these static dynamometer lab conditions (a vehicle treadmill), the Defeat Device enables the vehicles to operate in this low power mode.

18.    This low power mode, also known as the "low $CO_2$" program, works by causing the vehicles to shift gears early to maintain artificially low engine revs and emissions.

19.    At *all other times*—that is, when the vehicles are actually being driven under normal conditions—the transmission computer switches to "road calibration" mode which offers full power to the driver and which results in increased fuel consumption and greater $CO_2$ emissions.    Indeed, the road calibration mode activates once the driver turns the steering wheel fifteen degrees, something happens almost immediately under normal driving conditions.

20.    This Defeat Device scheme allowed Audi to deceptively misrepresent the vehicles' fuel consumption and $CO_2$ emissions to governmental authorities and to the consuming public.  A vehicle's advertised fuel economy, which is listed on the "Monroney sticker" or window sticker, is determined by driving a vehicle over five standardized driving patterns (or drive cycles), all of which are performed in a laboratory on a dynamometer where the conditions for all tests can be controlled. These driving cycles include cold starts, hot starts, highway driving, aggressive and high speed driving, driving with the air conditioner in use under conditions similar to a hot day in the summer in Los Angeles and driving in cold temperatures.   Data from the five drive cycles are combined and adjusted for "real world" conditions in a way to represent "City" driving and "Highway" driving.   The "combined" fuel economy is the average of the City and Highway values with weights of 55% and 45%, respectively.   These adjusted and combined values appear on the vehicle's Monroney sticker.

21.    During each of the drive cycles—all of which are performed in a lab,

imbedded the cheat software in the TCM unit, intentionally making its detection less probable.

under the vehicles' low power/low emissions/low fuel consumption mode—the amount of each pollutant is measured. This includes un-combusted or partially combusted gasoline (hydrocarbons or HC), carbon monoxide (CO), and $CO_2$. The amount of carbon produced is then converted to amount of gasoline which was required to produce the carbon in the exhaust. The amount of gasoline produced during the tests is divided into the distance driven on the test to produce the fuel economy.

22. Based on this equation, as the amount of $CO_2$ produced increases, the gasoline used increases and the fuel economy decreases. Therefore, if a vehicle produced less $CO_2$ during laboratory testing, but higher $CO_2$ when driven on road, then the vehicle would have better estimated fuel economy represented on the Monroney sticker than the vehicle would actually achieve on road.

23. This is exactly what happened here. Again, in simple terms, the Defeat Device program equips the vehicles with two modes or personalities. The "dyno calibration" personality reduces fuel supply and limits revolutions per minute ("rpm") per gear, reducing fuel burn and lowering emissions. This personality was engaged during all of the laboratory testing used to calculate the vehicles' purported fuel economy. The "road calibration" personality, in contrast, allows the engine to turn maximum rpm in each gear and provides the necessary (much higher) fuel supply required to deliver advertised torque and performance. This is the personality engaged during all normal driving.

24. This is not the first time Audi's parent company Volkswagen was caught using a Defeat Device. In September 2015, the Environmental Protection Agency ("EPA") and CARB revealed Volkswagen, had for years been perpetrating an illegal scheme to hide the true emissions of both their Audi and Volkswagen "Clean Diesel" vehicles by equipping them with a Defeat Device. That Defeat Device allowed the implicated diesel vehicles to detect government testing conditions and emit lower nitrous oxide ("NOx") during testing. At all other times, the diesel engines emitted

NOx at well over the legal limits.    Litigation followed this discovery, and a little more than one year later, Volkswagen agreed to a $14.7 billion settlement to compensate those in the United States for the economic and environmental harm it caused.  This settlement is one of the largest consumer settlements in  United States history.

25.    Thus, Audi was aware that emissions and fuel consumption were decisive factors for customers making purchase decisions.    In response, Audi represented to consumers that its vehicles consumed less fuel and emitted less $CO_2$ than they actually do in normal driving conditions.

26.    In addition, on the "Environment" page of its website, Volkswagen Group of America, Inc., stated as late as September 2015 that it takes "environmental responsibility very seriously.  When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."    As the Defeat Device revelations show, nothing could be further from the truth.

## AUDI'S KNOWLEDGE

27.    The installation of the Defeat Device could only be done intentionally. Audi commissioned its own study, in fact, which found that a vehicle's fuel consumption on the road increased by 8.5% after the steering wheel was turned.

28.    Moreover, high-placed Audi executives knew precisely how the Defeat Device worked, and instructed company employees to utilize it as much as possible to deceive regulators and the public.  Volkswagen and Audi management discussed the Defeat Device software in detail, for example, during a "Summer Drive" event in South Africa in the second half of February 2013.  According to the event minutes, Axel Eiser, then the head of Audi's powertrain division (and currently the head of powertrain development of the entire Volkswagen group) asked: "When will we have the cycle optimized shift program?"  He continued: "The shifting program shall be

designed to be 100% active on the dyno, but only 0.01% in the hands of the customer." The widespread use of the Defeat Device and its complicated implementation make it absurd that high-level Audi executives did not know about its existence. This practice is highly deceptive and illegal.

29. Necessarily, Defendants also took steps to ensure that its employees did not reveal the details of their deception to regulators or consumers, including Plaintiff and Class members. This deception continued even as Defendants issued feigned apologies for the Defeat Device scandal. Defendants did so in order to boost the reputations of their vehicles and to falsely assure purchasers and lessors of their vehicles, including certified previously owned vehicles, that they are reputable manufacturers that comply with applicable law, including federal and state clean air and emissions regulations, and that their vehicles likewise comply with applicable laws and regulations.

## TOLLING OF THE STATUTE OF LIMITATIONS

**Discovery Rule Tolling**

30. Plaintiff could not have discovered through reasonable diligence that his vehicle was defective within the time period of any applicable statutes of limitation.

31. It was not until the German newspaper *Bild am Sonntag* reported on CARB's discovery of the Defeat Device on November 5, 2016, that the public at large learned about the Defeat Device.

32. Among other things, Plaintiff did not know and could not have known until November 7, 2016, when published reports disclosed that the vehicles are equipped with the Defeat Device. Therefore, Plaintiff's claims and the claims of all Class members did not accrue until they discovered that the Defeat Device caused the vehicles to fail required emissions standards.

**Fraudulent Concealment Tolling**

33. Throughout the time period relevant to this action, Audi concealed from and failed to disclose to Plaintiff and the other Class members vital information about

the Defeat Device equipped on the vehicles. Indeed, Audi kept Plaintiff and the other Class members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the other Class members could have discovered the defect, even upon reasonable exercise of diligence.

34.     Prior to the date of this Complaint, Audi knew of the Defeat Device in the vehicles, but continued to manufacture, market, distribute, lease, and/or sell the vehicles to Plaintiff and the other Class members. In doing so, Audi concealed from or failed to notify Plaintiff and the other Class members about the true nature of the vehicles.

35.     Plaintiff and the other Class members justifiably relied on Audi to disclose these material defects in the Audi vehicles they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiff and the other Class members.

36.     Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that the Plaintiff and the other Class members have sustained as a result of the defects by virtue of the fraudulent concealment doctrine.

**Estoppel**

37.     Audi was under a continuous duty to disclose to Plaintiff and the other Class members the existence of the Defeat Device, which substantially affects the true character, quality, performance, and nature of the vehicles. Audi actively concealed the true character, quality, performance, and nature of the Defeat Device in the vehicles, and Plaintiff and the other Class members reasonably relied upon Audi's knowing and active concealment of these facts. Audi is accordingly estopped from relying on any statute of limitations in defense of this action. For these same reasons, Audi is estopped from relying upon any warranty mileage and age limitations in defense of this action.

**CLASS ACTION ALLEGATIONS**

38.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and on behalf of the Class, defined as:

<u>Nationwide Class</u>:

All persons and entities within the United States (including its Territories and the District of Columbia) that purchased or leased a vehicle.

39.    In the alternative to the Nationwide Class, and pursuant to Rule 23(c)(5) of the Federal Rules of Civil Procedure, Plaintiff seeks to represent the following State Class as well as any subclasses or issue classes as Plaintiff may propose and/or the Court may designate at the time of class certification:

<u>State Class</u>:

All persons and entities in the State of California that purchased or leased a vehicle.

40.    Excluded from the Classes are Audi, as well as Audi's employees, affiliates, officers, and directors, including franchised dealers, any individuals who experienced physical injury as a result of the defect at issue in this litigation, and the judge and court staff to whom this case is assigned.

41.    Plaintiff reserves the right to modify and/or add to the Nationwide and/or State Classes prior to class certification.

**Fed. R. Civ. P. 23(a) Prerequisites**

42.    **Numerosity.** Both the Nationwide and State Classes are so numerous that joinder of all members is impracticable.   Although, the precise number of Class members is unknown and is within the exclusive control of Audi and its affiliated dealerships, Audi has sold at least 100,000 vehicles in the United States, including thousands in the State of California.

43.    **Commonality.** The claims of Plaintiff and the Nationwide and State Classes involve common questions of fact and law that will predominate over any

individual issues.    These common questions include, but are not limited to:

(a)    whether the vehicles that Audi designed, manufactured, marketed, distributed, leased, and/or sold contained a concealed Defeat Device and emitted unlawful levels of $CO_2$ during their normal use;

(b)    whether Audi designed, manufactured, marketed, distributed, leased, and/or sold the vehicles and/or their emissions-related systems, including Defeat Devices, in the United States;

(c)    whether Audi knew or should have known of the Defeat Device at the time of designing, marketing, distributing, leasing, and/or selling the vehicles;

(d)    whether Audi knew or should have known that its representations regarding the emissions and/or fuel efficiency of the vehicles were false at the time of designing, marketing, distributing, leasing, and/or selling the vehicles;

(e)    whether the true nature of the vehicle's performance, emissions levels, fuel economy, and the inclusion of the Defeat Device constitute material facts that reasonable consumers would have considered in deciding whether to purchase a vehicle;

(f)    whether Audi's conduct violates consumer protection statutes and other laws as asserted herein;

(g)    whether Plaintiff and the other Class members overpaid for their vehicles;

(h)    whether Audi had a duty to disclose the true nature of the vehicles to Plaintiff and the other Class members;

(i)    whether Audi omitted, actively concealed, and/or failed to disclose material facts about the vehicles;

(j)    whether concealment of the true nature of the vehicles would have induced a reasonable consumer to act to their detriment by purchasing and/or leasing the vehicles;

(k)    whether the vehicles can be manufactured to comply with federal

- 11 -

1  and state emission standards without degrading their performance and/or efficiency;

2  (l)    whether Plaintiff and the other Class members are entitled to

3  equitable relief, including, but not limited to, restitution and injunctive relief; and

4  (m)    whether Plaintiff and the other Class members are entitled to

5  damages and other monetary relief and, if so, in what amount.

6  44.    **Typicality.**  Plaintiff's claims are typical of Nationwide and State

7  Classes members' claims.  As described herein, Plaintiff and the other Class members

8  purchased or leased a vehicle, which was designed, manufactured, marketed,

9  distributed, leased, and/or sold by Audi.   Plaintiff and the other Class members have

10  been damaged by Audi's illegal conduct.  Plaintiff and the other Class members have

11  incurred similar or identical losses relating to the vehicles.   Furthermore, the factual

12  bases of Audi's misconduct are common to all Class members and represent a

13  common thread of misconduct resulting in injury to all Class members.

14  45.    **Adequacy.**  Plaintiff will fully and adequately represent and protect the

15  interests of the Nationwide and State Classes because he shares common interests

16  with Class members as a result of Audi's illegal conduct.

17  46.    Plaintiff has retained counsel with experience in complex, commercial,

18  multi-party, consumer, and class action litigation.   Plaintiff's counsel has prosecuted

19  dozens of complex class actions, including those involving defective automobiles, in

20  state and federal courts across the country.

21  47.    Plaintiff and his counsel are committed to vigorously prosecuting this

22  action on behalf of the Classes and have the financial resources to do so.   Neither

23  Plaintiff nor his counsel have interests adverse to those of the Classes.

24  **Fed. R. Civ. P. 23(b) Prerequisites**

25  48.    **Predominance.**  Questions of law and fact common to the Nationwide

26  and State Classes, including those listed above, predominate over questions affecting

27  individual members, and a class action is superior to other available methods for the

28  fair and efficient adjudication of this controversy.  Individual damages on the matter

can be readily calculated.   Thus, the question of individual damages will not predominate over legal and factual questions common to the  Nationwide and State Classes.    Additionally, Audi has acted or refused to act on grounds that apply generally to the Nationwide and State Classes, so that final injunctive relief and/or corresponding declaratory relief is appropriate with respect to the Nationwide and State Classes.

49.   **Superiority.**   Audi's scheme treated consumers as a Class to be uniformly deceived.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff and Class members have all suffered and will continue  to suffer economic harm and damage as a result of Audi's unlawful and wrongful conduct, which  was directed toward Class members and the public as a whole, rather than specifically or uniquely against any individual Class members.  Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is  likely that only a few Class members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class members will continue to incur damages, and  Defendants' misconduct will continue without effective remedy.

50.   **Declaratory and Injunctive Relief.**   Classwide declaratory, equitable, and  injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure because Audi has acted on  grounds that apply generally to the Class, and inconsistent adjudications with respect to Audi's  liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests.   Classwide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Audi's discharge of its duties to perform corrective action regarding the vehicles.

## COUNT I

### Violation of Magnuson Moss Warranty Act, 15 U.S.C. §§2301, *et seq.*
### (On Behalf of the Nationwide Class)

51.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52.    Plaintiff brings this Count on behalf of himself and the Nationwide Class.

53.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. §1332(a)-(d).

54.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of 15 U.S.C. §2301(4) and (5) because the company regularly sells Audi vehicles accompanied by the written Limited Warranties.

55.    Plaintiff and the other Class members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. §2301(1) and (3) because they purchased vehicles for personal, family, or household purposes.

56.    The vehicles are "consumer products" within the meaning of the Act. 15 U.S.C. §2301(1).

57.    The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.    15 U.S.C. §2310(d)(1).

58.    The amount in controversy of the Plaintiff's individual claims meets or exceeds $25 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

59.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

60.    Audi provided Plaintiff and the Nationwide Class with two express

- 14 -

warranties: (i) "bumper-to-bumper" limited express warranty coverage for a minimum of four years or 50,000 miles, whichever comes first, and which covers emission related repairs; and (ii) a federal emissions warranty that covers the repair and replacement of all emission control and emission-related parts for two years or 24,000 miles (whichever comes first), and covers specified major emission control components, including catalytic converters, electronic emissions control unit or computer and on-board emissions diagnostic device or computer for eight years or 80,000 miles (whichever comes first).   These express warranties constitute written warranties within the meaning of 15 U.S.C. §2301(6).   The vehicles' implied warranties are covered by 15 U.S.C. §2301(7).

61.    The terms of written warranties and implied warranty became part of the basis of the bargain between Plaintiff and all other Class members when deciding to purchase a vehicle.

62.    Audi breached these written and implied warranties as described in detail above.   Without limitation, the vehicles share a common design defect in that they emit more $CO_2$ than: (i) is allowable under the applicable regulations; and (ii) Audi represented were emitted to their customers, the public, and regulators.

63.    Plaintiff and each of the other Nationwide Class members have had sufficient direct dealings with either Audi or its agents (including Audi dealerships) to establish privity of contract between Audi, on the one hand, and Plaintiff and each of the other Nationwide Class members, on the other hand.   Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Audi and its dealers, and specifically, of Audi's implied warranties.   The dealers were not intended to be the ultimate consumers of the vehicles and have no rights under the warranty agreements provided with the vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

64.    Affording Audi a reasonable opportunity to cure its breach of written

warranties would be unnecessary and futile here.   At the time of sale or lease of each vehicle, Audi knew, should have known, or was reckless in not knowing of its misrepresentations concerning the vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or affords Audi a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

65.    As a direct and proximate result of Audi's breach of the written warranties and the implied warranty of merchantability, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

66.    Plaintiff, individually and on behalf of the Nationwide Class, seeks all damages permitted by law, including compensation for the monetary difference between the vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages; statutory attorney fees; and all other relief allowed by law.

## COUNT II

### Fraud
### (On Behalf of the Nationwide Class or, in the Alternative, the State Class)

67.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.    Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Class.

69.    As alleged above, Defendants intentionally concealed and suppressed material facts concerning the illegality and quality of the vehicles in order to defraud and mislead both regulators and the Class about the true nature of the vehicles.  Audi accomplished their scheme by installing, aiding in the installation of, and/or failing to

- 16 -

disclose the Defeat Device in the vehicles that caused the vehicles to operate in a low-emission test mode only during testing. During normal operation and use, the vehicles emitted significantly larger quantities of $CO_2$. The result was precisely what Audi intended—the vehicles were able to pass emission testing by way of deliberately induced false readings and thus successfully imported and sold and/or leased thousands of unwitting American consumers.

70.     Audi represented that the vehicles had functioning emissions systems that operated within legal limits during normal driving conditions.

71.     Audi's false representations and omissions were material to consumers, as they concerned the legality and marketing features of the vehicles.

72.     Plaintiff and Class members reasonably relied on Audi's deception, and Audi intended that they would so rely. Plaintiff and Class members had no way of discerning that Defendants were, in fact, deceiving them because the Defeat Device was sophisticated technology that could not be discerned by regulators, much less consumers.

73.     Audi's scheme to design and install Defeat Device software in the vehicles for the specific purpose of circumventing U.S. law, and then concealing their fraudulent scheme, reveals a corporate culture that emphasized sales and profits over integrity and public health.

74.     Audi had a duty to disclose the Defeat Device to regulators and the public.

75.     Audi hatched the deceptive scheme and knew that their customers, including Plaintiff and Class members, did not know about, and could not reasonably discover, their scheme.

76.     Plaintiff and Class members were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did had regulators or the driving public known the truth.

77.     As a direct and proximate result of Audi's fraudulent scheme, Plaintiff

and Class members sustained damages.   They own or lease vehicles that are non-compliant and severely diminished in value as compared to the vehicles that were advertised or marketed.  Moreover, the vehicles either cannot be repaired to comply with applicable emissions standards, or if they can be made compliant, their performance, fuel efficiency, and longevity will be compromised.

78.    Audi is liable to Plaintiff and Class members for damages in an amount to be proven at trial.    Moreover, because Audi acted wantonly, maliciously, oppressively, recklessly,  deliberately, and with intent to defraud Plaintiff and Class members for the purpose of enriching themselves at Plaintiff and Class members' detriment, Audi's conduct warrants substantial  punitive and exemplary damages in an amount to be determined at trial.

## COUNT III

### Breach of Contract
### (On Behalf of the Nationwide Class or, in the Alternative, the State Class)

79.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.    Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Class.

81.    Every purchase or lease of a vehicle from an authorized dealer of Audi constitutes a contract between Audi and the purchaser or lessee.   Audi materially breached these contracts by selling or leasing Plaintiff and all other Class members defective, non-compliant vehicles and by misrepresenting or failing to disclose the existence of the Defeat Device, rendering the vehicles substantially less valuable than the vehicles that the Defendants advertised and promised to deliver to Plaintiff and the other Class members.

82.    Audi's misrepresentations and omissions alleged herein caused Plaintiff and the  other Class members to enter into their agreements to purchase or lease their vehicles.   Absent those misrepresentations and omissions, Plaintiff and other Class

members would not  have purchased or leased their vehicles and/or would not have purchased or leased their vehicles at the prices they paid.   Accordingly Plaintiff and other Class members  overpaid for their vehicles and did not receive the benefit of their bargain.

83.    Audi also breached their implied covenant of good faith and fair dealing under the laws of all fifty states and the District of Columbia.    By delivering a vehicle that contained Defeat Device software and thus exceeded, during normal use, federal and state emission limits, Audi  violated Plaintiff's and the other Class members' fair and reasonable expectations under their respective contracts.    In addition, Audi's misrepresentations and omissions violated Audi's implied duty to deal honestly, and within reasonable commercial standards of fair dealing, with Plaintiff and the other Class members.

84.    As a direct and proximate result of Audi's breach, Plaintiff and the other Class  members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages  allowed by law.

### COUNT IV

**Unjust Enrichment**
**(On Behalf of the Nationwide Class or, in the Alternative, the State Class)**

85.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.    Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Class.

87.    Audi benefited from selling and leasing, at an unjust profit, vehicles that had artificially inflated values due to Audi's concealment of the Defeat Device, and Plaintiff and the other Class members have overpaid for these vehicles.

88.    Audi received and retained unjust benefits from the Plaintiff and the other Class members, and inequity has resulted.

- 19 -

1    89.    It is inequitable and unconscionable for Audi to retain these benefits.

2    90.    Because Audi concealed their fraud and deception, Plaintiff and the other

3  Class members were not aware of the true facts concerning the vehicles and did not

4  benefit from Audi's misconduct.

5    91.    Audi knowingly accepted the unjust benefits of their fraudulent conduct.

6    92.    As a result of Audi's misconduct, the mount of their unjust enrichment

7  should be disgorged and returned to Plaintiff and the other Class members, in an

8  amount to be proven at trial.

9  ## COUNT V

10
11  **Violation of Song-Beverly Consumer Warranty Act,
Breach of Implied Warranty, Cal. Civ. Code §§1790, *Et Seq.*
(On Behalf of the State Class)**

12

13    93.    Plaintiff incorporates by reference and realleges each and every

14  allegation contained above, as though fully set forth herein.

15    94.    Plaintiff brings this Count on behalf of himself and the State Class.

16    95.    Plaintiff and the other members of the State Class who purchased

17  vehicles in California are "buyers" within the meaning of California Civil Code

18  section 1791.

19    96.    The vehicles are "consumer goods" within the meaning of California

20  Civil Code section 1791(a).

21    97.    Audi is the "manufacturer" of the vehicles within the meaning of

22  California Civil Code section 1791(j).

23    98.    Audi impliedly warranted to Plaintiff and the other members of the

24  State Class that the vehicles were "merchantable" within the meaning of California

25  Civil Code sections 1791.1(a) and 1792; however, the vehicles do not have the

26  quality that a buyer would reasonably expect.

27    99.    California Civil Code section 1791.1(a) states: "Implied warranty of

28  merchantability" or "implied warranty that goods are merchantable" means that the

consumer goods meet each of the following:

      (a)    pass without objection in the trade under the contract description;

      (b)    are fit for the ordinary purposes for which such goods are used;

      (c)    are adequately contained, packaged, and labeled; and

      (d)    conform to the promises or affirmations of fact made on the container or label.

100.   The vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with a "Defeat Device."   The Defeat Device is designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.  However, when the vehicles are in regular use on the road, it emits a substantially increased amount of noxious gas.

101.   The vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

102.   In the various channels of information through which Audi sold vehicles, Audi failed to disclose material information concerning the vehicles, which it had a duty to disclose.  Audi had a duty to disclose the defect because, as detailed above:

      (a)    Audi knew about the defect;

      (b)    Audi had exclusive knowledge of material facts not known to the general public, Plaintiff, or the other State Class members; and

      (c)    Audi actively concealed material facts concerning the fact that the vehicles were equipped with a Defeat Device from the general public, Plaintiff, and the State Class members.  As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the vehicles, all of which was intended to induce consumers to purchase the vehicles.

103.   Audi breached the implied warranty of merchantability by manufacturing and selling vehicles that are defective.  Furthermore, this defect has caused Plaintiff and the other members of the State Class to not receive the benefit of their bargain

1   and have caused the vehicles to depreciate in value.

2   104.   Plaintiff and the other members of the State Class have been damaged as

3   a result of the diminished value of Audi's products.

4   105.   Under California Civil Code sections 1791.1(d) and 1794, Plaintiff and

5   other members of the State Class are entitled to damages and other legal and equitable

6   relief including, at their election, the purchase price of their vehicles, or the

7   overpayment or diminution in value of their vehicles.

8   106.   Under California Civil Code section 1794, Plaintiff and the other

9   members of the State Class are entitled to costs and attorneys' fees.

10   **<u>COUNT VI</u>**

11   **Violation of the Song-Beverly Consumer Protection Act,**
**Breach of Express Warranty, Cal. Civ. Code §§1790, *Et Seq.***
12   **(On Behalf of the State Class)**

13

14   107.   Plaintiff incorporates by reference and realleges each and every

15   allegation contained above, as though fully set forth herein.

16   108.   Plaintiff brings this Count on behalf of himself and the State Class.

17   109.   Plaintiff and the other members of the State Class who purchased or

18   leased the vehicles in California are "buyers" within the meaning of California Civil

19   Code section 1791(b).

20   110.   The vehicles are "consumer goods" within the meaning of California

21   Civil Code section 1791(a).

22   111.   Audi is a "manufacturer" of the vehicles within the meaning of

23   California Civil Code section 1791(j).

24   112.   Audi made express warranties to Plaintiff and the other members of the

25   State Class within the meaning of California Civil Code sections 1791.2 and 1793.2,

26   as described above.

27   113.   As set forth above in detail, the vehicles are inherently defective in that

28   they are equipped with a "Defeat Device." The Defeat Device is designed to secretly

- 22 -

limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the vehicles are in regular use on the road, it emits a substantially increased amount of noxious gas. The installation of the Defeat Device substantially impairs the use and value of the vehicles to reasonable consumers.

114.   As a result of Audi's breach of their express warranties, Plaintiff and the other members of the State Class received goods whose defect substantially impairs their value to Plaintiff and the other members of the State Class. Plaintiff and the other members of the State Class have been damaged as a result of, inter alia, the diminished value of Audi's products.

115.   Pursuant to California Civil Code sections 1793.2 and 1794, Plaintiff and the other members of the State Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

116.  Pursuant to California Civil Code section 1794, Plaintiff is entitled to costs and attorneys' fees.

## COUNT VII

**Violation of California Consumers Legal Remedies Act,**
**Cal. Bus. & Prof. Code §§1750, *Et Seq.***
**(On Behalf of the State Class)**

117.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118.   Plaintiff brings this Count on behalf of himself and the State Class.

119.   Plaintiff and the other members of the State Class were deceived by Audi's failure to disclose that the vehicles share a uniform defect in that they are equipped with a "Defeat Device." The Defeat Device is designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the vehicles are in

regular use on the road, it emits a substantially increased amount of noxious gas.

120.   Audi engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses, and benefits of the vehicles.

121.   In the various channels of information through which Audi sold vehicles, Audi failed to disclose material information concerning the vehicles, which they had a duty to disclose.  Audi had a duty to disclose the defect because, as detailed above: (i) Audi knew about the Defeat Device equipped on the vehicles; (ii) Audi had exclusive knowledge of material facts not known to the general public, Plaintiff, or the other State Class members; and (iii) Audi actively concealed material facts concerning the Defeat Device from the general public, Plaintiff, and the State Class members.  As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the vehicles, all of which was intended to induce consumers to purchase the vehicles.

122.   Audi intended for the Plaintiff and the other State Class members to rely on them to provide adequately designed, and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

123.   Audi intentionally failed or refused to disclose the defect to consumers.

124.   Audi's conduct and deceptive omissions were intended to induce Plaintiff and the other State Class members to believe that the vehicles were adequately designed and adequately manufactured automobiles.

125.   Audi's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

126.   Plaintiff and the other State Class members have suffered injury in fact and actual damages resulting from Audi's material omissions because they paid inflated purchase prices for the vehicles.

127.   Plaintiff and the State Class seek an order enjoining Audi's unfair or

deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under California Civil Code section 1780(e), and any other just and proper relief available under the CLRA.

128.   In accordance with section 1782(a) of the CLRA, Plaintiff's counsel, on behalf of Plaintiff, will serve Audi with notice of their alleged violations of California Civil Code section 1770(a) relating to the vehicles purchased by Plaintiff and State Class members, and  demand that Audi corrects or agrees to correct the actions described therein within thirty days of such notice.   If Audi fails to do so, Plaintiff will amend this Complaint as of right (or  otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to  which Plaintiff and Class members are entitled.

129.   Audi's conduct described herein is fraudulent, wanton, and malicious.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes, as they may be modified or amended, and respectfully requests this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more  Classes as defined above;

B.    Appoint Plaintiff as the representative of the Classes and his counsel as Class counsel;

C.    Award damages, including compensatory and exemplary damages, to Plaintiff and all other Class members;

D.    Award Plaintiff and Class members actual damages sustained;

E.    Award Plaintiff and Class members such additional damages, over and above the amount of their actual damages, that are authorized and warranted by law, applicable;

F.    Grant restitution to Plaintiff and Class members and require Defendants

1   to disgorge inequitable gains;

2        G.     Grant appropriate injunctive and/or declaratory relief, including, without

3   limitation, an order that requires Defendants to repair, recall, and/or replace the

4   vehicles and to extend the applicable warranties to a reasonable period of time, or, at a

5   minimum, to provide Plaintiff and Class members with appropriate curative notice

6   regarding the existence and cause of the defect;

7        H.     Award Plaintiff and Class members punitive damages;

8        I.     Award Plaintiff and Class members their reasonable attorneys' fees and

9   reimbursement of all costs for the prosecution of this action; and

10       J.     Award such other relief as this Court deems just and appropriate.

11  <u>**JURY DEMAND**</u>

12       Plaintiff hereby demands a trial by jury on all issues so triable.

13  Dated: December 16, 2016          ROBBINS ARROYO LLP

14                                        BRIAN J. ROBBINS

15                                        KEVIN A. SEELY
                                      LEONID KANDINOV

16

17                                    /s/*Brian J. Robbins*
                                   BRIAN J. ROBBINS

18

19                                    600 B Street, Suite 1900
                                  San Diego, CA 92101

20                                    Telephone: (619) 525-3990
                                  Facsimile: (619) 525-3991

21                                    E-Mail: brobbins@robbinsarroyo.com
                                          kseely@robbinsarroyo.com

22                                            lkandinov@robbinsarroyo.com

23                                    Attorneys for Plaintiff

24

25

26

27  1140066

28